## Strunk v. Commonwealth.

March 21, 1941.

J. C. Bird for appellant.

Hubert Meredith, Attorney General, and Earl S. Wilson, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Cal F. and Bennie Strunk were indicted jointly in the McCreary circuit court for the crime of hog stealing, the punishment for which is prescribed by Section 1196, Kentucky Statutes. On his separate trial Cal F. Strunk was convicted and his punishment fixed at confinement in the penitentiary for a period of three years. On this appeal the principal ground urged for reversal of the judgment is alleged error of the trial court in admitting incompetent evidence over appellant's objection.

The indictment charged appellant and his codefendant with the theft of two hogs, one owned by Allen King and one by Earl Bell, and each of the value of more than $4. The commonwealth's attorney was required to elect and he elected to try appellant for the theft of Allen King's hog. Mrs. Bell King, mother-in-law of appellant, lived with her son-in-law at the time of the theft and she testified that Cal and Bennie Strunk brought two hogs to Cal Strunk's home, butchered them and divided the meat between them. Bennie Strunk wrapped his share of the meat in flour sacks which had been sewed together and left Cal Strunk's home about midnight. Later in the night Bennie Strunk appeared at the home of Ledford King who testified that Bennie arrived at his home before daylight and had in his possession fresh hog meat wrapped in flour sacks which had been sewed together. He remained until after breakfast and left with Ledford King, taking with him the sacks of meat, when the latter went to work at a neighboring village. Emma and Myrtle King, daughters of Ledford King, testified to the same effect. One of them described the meat as "hams and shoulders of a hog" and stated that it was in "flour sacks sewed up about the size of a sheet." It is this testimony of Ledford King and his daughters of which complaint is made. There is other evidence tending to connect appellant with the commission of the crime with which he was charged, but

it is unnecessary to recite it since it is conceded that the evidence was sufficient to take the case to the jury.

The court overruled appellant's objections to the testimony of Ledford King and his daughters, but admonished the jury as follows: "The evidence can be received by you only to corroborate the witness Mrs. Belle King if, in your opinion, it does so do and not for any other purpose." Appellant argues that the admission of this evidence violates the rule universally recognized that acts and declarations of a co-conspirator or codefendant done or made after termination of the conspiracy in accused's absence or not in his hearing are inadmissible against him and was prejudicially erroneous.

The general rule is as stated by appellant in his brief, but it is subject to an exception or qualification, in that evidence that a co-conspirator or codefendant is in possession of the fruits of the crime or of incriminating articles is admissible even though the accused was not present at the time. 22 C. J. S., Criminal Law, Section 768. Where the acts constituting the crime charged are larcenous in their nature, evidence is admissible to trace stolen property, and if it is found in the possession of a codefendant, that fact may be shown.

In Branson v. Commonwealth, 92 Ky. 330, 17 S. W. 1019, 1020, 13 Ky. Law Rep. 614, William Branson was jointly indicted with his father, Hezekiah Branson, and his brother-in-law, George Noe, for breaking into a storehouse and stealing goods therefrom. On William Branson's separate trial evidence was admitted showing that portions of the stolen goods were found in the possession of his codefendants. It was proved that some men who were watching Noe's house saw him come out with a package which was afterwards found to contain a lot of the stolen goods. Noe went some distance in the woods and hid the sack in a hollow tree. William Branson was not present. In the course of the opinion it was said:

"As all the property was taken at the same time, it was competent to show in whose possession different articles of it were found; and we fail to see how the evidence relating to Noe's conduct, and what he was doing with the articles in his possession when he was arrested, could have been prejudicial to the accused."

·In Davis v. Commonwealth, 191 Ky. 242, 229 S. W. 1029, Davis and one J. W. Knipper were jointly indicted charged with grand larceny. It was charged that the accused broke into a dry cleaning establishment and stole, among other things, fourteen suits of clothes. On the separate trial of Davis, evidence was admitted showing that Knipper, at the time of his arrest, was wearing a suit of the stolen clothes. It was held that the admission of this evidence was proper.

In Wharton's Criminal Evidence, 11th Edition, Vol. 2, Section 714, Davis v. Commonwealth is cited in support of the following text:

"But while the general rule is that the acts and declarations of conspirators after the end of the conspiracy are inadmissible against co-conspirators, it may always be shown that such other co-conspirators were in possession of the fruits of the crime, or the weapon or instrument with which it was committed."

Cases to the same effect from foreign jurisdictions are State v. Costello, Mo. Sup., 252 S. W. 727; Page v. State, 181 Ark. 314, 25 S. W. (2d) 422; Ford v. State, 110 Tex. Cr. R. 484, 9 S. W. (2d) 344; State v. Blackwood, 103 ·Wash. 529, 175 P. 168.

In the present case, none of the witnesses testified to any statements made by Bennie Strunk while he was at Ledford King's home; they merely described property which they saw in his possession. In Wiley v. State, 92 Ark. 586, 124 S. W. 249, 252, Wiley and Tom Trotter, Jr., were jointly indicted for grand larceny. On Wiley's separate trial evidence was admitted showing that part of the alleged stolen goods were found at the house of Trotter. It was contended that such evidence was in the nature of the declaration, act and conduct of a co-conspirator and was inadmissible inasmuch as the acts and conduct of Trotter occurred and the possession of the goods was discovered at Trotter's house in the absence of defendant and long after the criminal enterprise had ended. After stating the general rule that the conduct or declaration of one conspirator after the criminal enterprise is ended is inadmissible against his co-conspirator the court said:

"But this rule does not apply when the possession

of the goods that were stolen at the same time are found in the possession of such party. The fact that each of the parties is found to possess portions of the stolen goods which were taken at the same time is itself competent to establish a conspiracy and to implicate each in the commission of the crime. The fact that the several portions of goods made in the aggregate the amount of goods that it is proved were taken would be a circumstance to identify the goods, although the separate portions were found at different places; and such evidence would also be competent for that purpose."

When fruits of the crime are found in the possession of an associate or companion of the accused, accompanied by evidence of complicity, that fact is relevant and admissible as it tends to connect the accused with the commission of the crime.

In addition to charging appellant with the crime of hog stealing, the indictment charged that he was an habitual criminal and in three counts charged that he had been convicted of three felonies prior to the commission of the crime charged in the first count. In appellant's brief it is stated that the commonwealth's attorney read the entire indictment to the jury and then introduced evidence as to only one former conviction. It is suggested that this was prejudicial to the substantial rights of appellant, but he cannot complain because the commonwealth's attorney failed to press the habitual criminal charge. Furthermore, the conduct of the commonwealth's attorney which is criticised was not made a ground for a new trial and does not appear in the bill of exceptions.

We find no error prejudicial to the appellant's substantial rights, and the judgment is affirmed.