Wallace H. FRANKLIN and Marvin Mann, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 3, 1972.

Joseph J. Grace, Jim L. Lindblad, Paducah, for appellants.

John B. Breckinridge, Atty. Gen., George F. Rabe, Asst. Atty. Gen., for appellee.

GARDNER, Commissioner.

Wallace H. Franklin and Marvin Mann were convicted on three counts of dwelling-house breaking, a crime denounced by KRS 433.180, and on one count of having in possession burglary tools, a crime denounced by KRS 433.120. Their sentences were fixed at three years on each count and ordered to run consecutively.

Several houses had been broken into in the Barkley Shores subdivision. Suspicion led people of the community to connect a blue 1963 Ford with the crimes. The car was seen near the home of Tom Lyons one Sunday morning when Lyons and his family returned from church. A man ran off the porch and got into the blue Ford. He was later identified as appellant Wallace Franklin. Appellant Mann was later identified as having been in the car on that occasion. One of the appellants asked Lyons if he knew where Harlin Maddux lived. This inquiry becomes meaningful when it is connected with testimony that the same question was asked by appellants on several other occasions. Harlin Maddux was a first cousin of Franklin and Franklin had visited his home on at least one other occasion. Although Lyons directed Franklin to where Maddux lived, Franklin did not go to Maddux's place. Lyons discovered that the hook on his screen door was pulled off and that two shotguns, a rifle and a money bank were missing. These items were never returned to Lyons. (Franklin and Mann were acquitted of the charge of breaking and entering the house of Lyons.)

Within a few weeks a cottage in the same vicinity, owned by David Williams, was broken into and a saw, a drill, a power saw and two boxes of tools were taken. Some of these items were later found in a trailer owned by appellant Franklin.

About the same time a cabin owned by Dr. Elias Futrell was broken into and a thermal blanket and pillow cases were stolen. These goods were found in Franklin's trailer.

The dwelling house of Robert McKenzie was broken into and a wallet, a BB gun and several other items were taken. The named items were found in Franklin's trailer.

The blue 1963 Ford, with two male persons in it, was seen moving slowly in the community by Jimmy Cunningham who recognized Franklin but was not sure who the other person was. He gave the license number to the sheriff.

Johnny Ahart testified that a blue 1963 Ford was driven up to his house. A man, later identified as Franklin, came to the door and inquired as to how to get to Canton.

According to Pauline Herndon, Franklin and Mann drove up to her house in a blue Ford. One of them came to the door and asked if she knew Harlin Maddux. She said she did not and directed him to Can-

ton with the suggestion that he could find someone there who probably would know Maddux. The two men left but instead of taking the road to Canton they turned another way. Mrs. Herndon called the secretary where her husband worked and related the incident. The secretary relayed the report to the sheriff's office.

The sheriff went toward the Herndon house. He met the blue Ford but it was past him before he realized it. While he waited for the car to come back, the sheriff notified the state police office. In a few minutes a state trooper arrived and soon after that the blue Ford returned. In it were Franklin and Mann. Franklin admitted he did not have a driver's license. The officer inquired as to why they were in the subdivision. The testimony of the sheriff at that point was, "They said: 'We are duck hunting.' And I asked them where the gun was. And he said: 'Well, we didn't bring a gun this time,' or something to that effect." Upon being given permission by Franklin to search the car, the trunk lid was opened. There, neatly arranged, were a pair of gloves, bolt cutters, two crow bars, a hammer, 30 feet of insulated wire and five screw drivers. After qualifying as experts on the subject, the sheriff and the state trooper testified that those were instruments commonly used in burglaries. Franklin and Mann were asked if they had stopped at Herndon's house, to which they first replied they had not. When the officers turned toward Herndon's house, according to the sheriff, one of them said, "Well, there is no need of going up there, we were here."

■ Franklin agreed that the officers might search his house trailer in Calloway County. When the search was made the items stolen from the houses referred to above were found. Appellant Franklin has questioned the sufficiency of the evidence to sustain the convictions and contends the court erred in not admonishing the jury relative to evidence of prior convictions. A conviction of dwelling-house breaking

may be sustained solely on circumstantial evidence. Rains v. Commonwealth, 293 Ky. 429, 169 S.W.2d 41 (1943). There was ample evidence against Franklin to support the convictions as disclosed by the above recounted testimony. When the evidence is examined as a whole and in proper perspective we find it sufficient to sustain the verdict. There was also sufficient evidence to submit to the jury the question of whether Franklin had burglary tools in his possession. Again, the totality of the evidence must be considered rather than the isolated instances. It is well settled that the intent to use a tool burglariously may be shown by circumstantial evidence. Rogers v. Commonwealth, Ky., 432 S.W.2d 405 (1968).

■ Insofar as the claimed error that the court did not admonish the jury as to the proper effect of evidence of prior convictions is concerned, we are not disposed to consider it because it was not preserved for appellate review. There was no request for an admonition. Davis v. Commonwealth, Ky., 399 S.W.2d 711 (1965), cert. denied 385 U.S. 831, 87 S.Ct. 67, 17 L.Ed.2d 66; RCr 9.22.

■ Appellant Mann assigns the same errors asserted by Franklin and adds that evidence of the alleged burglary tools found in the trunk of Franklin's car and the stolen goods found in Franklin's trailer was inadmissible as to him because the items were in the exclusive possession of Franklin. Admittedly the evidence against Mann did not equal the degree of incrimination of that against Franklin. It is stated in the nursery rhyme, "Anywhere that Mary went the lamb was sure to go." In less innocent demeanor, anywhere that Franklin went Mann was sure to go. There was sufficient evidence from which the jury, with propriety, could infer there was a concerted effort—a joint enterprise —on the part of Franklin and Mann which inculpated Mann. It is well established that possession of the fruits of a larcenous crime by a coconspirator may be shown in

evidence against the other coconspirator. Strunk v. Commonwealth, 285 Ky. 783, 149 S.W.2d 528 (1941). Similarly, possession of burglary tools by one coconspirator constitutes possession by the other within the meaning of the statute. Commonwealth v. Robinson, 242 Ky. 98, 45 S.W.2d 844 (1932).

It is noted that Franklin and Mann (who were represented by different counsel on the trial of the case) did not properly preserve for appellate review the questions of sufficiency of evidence and the admissibility of evidence relative to the burglary tools and the goods in the Franklin trailer. This is an additional reason why the judgment must be affirmed. Hatton v. Commonwealth, Ky., 409 S.W.2d 818 (1967); Arnold v. Commonwealth, Ky., 433 S.W.2d 355 (1968).

The judgment is affirmed.

All concur.