RENDERED: FEBRUARY 18, 2016
TO BE PUBLISHED

## Supreme Court of Kentucky

2015-SC-000239-MR

DATE 3-10-16 ᕗᐣᐣᐧᐟᐧᐟ⋯.⋯

ALLEN LLOYD LEHMANN        APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.      CASE NO. 2015-CA-000087-MR
JEFFERSON CIRCUIT COURT NO. 14-CI-003212

HON. SUSAN SCHULTZ GIBSON, JUDGE,       APPELLEE
JEFFERSON CIRCUIT COURT

AND

COMMONWEALTH OF KENTUCKY; L.M.B.;      REAL PARTIES IN INTEREST
L.M.D.; L.M.L.; THE KENTUCKY DISTRICT
OF THE ASSEMBLIES OF GOD;
THE ILLINOIS DISTRICT COUNCIL OF THE
ASSEMBLIES OF GOD; TRINITY CHAPEL
ASSEMBLY OF GOD, INC.;
GENERAL COUNCIL OF THE ASSEMBLIES
OF GOD

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**AFFIRMING AND DENYING WRIT OF MANDAMUS**

Allen Lloyd Lehman petitions this Court to issue a writ of mandamus directing the trial court to vacate its order staying discovery in his pending civil case. An issue of first impression in this Commonwealth, we hold that the trial court did not act erroneously in staying discovery in a civil action against Lehmann pending the completion of Lehmann's criminal prosecution stemming from essentially the same factual framework. In so doing, we affirm the Court

of Appeals' conclusion that Lehmann is not entitled to the writ he seeks. So Lehmann's petition is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Lehmann formerly served as an ordained pastor in the Assembly of God church. During his tenure, he allegedly committed acts of sexual abuse on three young girls—sisters, L.M.D., L.M.L., and L.M.B. Those alleged victims came forward many years later[1] and in May 2014, Lehmann was indicted for two counts of first-degree sodomy upon a victim under the age of 12 and seven counts of first-degree sexual abuse upon a victim under the age of 12. About a month after the indictment issued, the alleged victims filed a civil action against Lehmann and various Assembly of God entities, based essentially on the same allegations covered by the indictment.

In his answer in the civil action, Lehmann asserted various defenses and made clear that he would invoke his Fifth Amendment right against self-incrimination to the fullest. Not long after the civil action began, Trinity Chapel Assembly of God moved to dismiss it. While this motion was pending, Trinity filed a motion to stay civil discovery. Both the plaintiffs and Lehmann objected to staying discovery. In the meantime, the plaintiffs propounded discovery requests on the various defendants.

Another of the civil-action defendants, The Illinois District Council of the Assemblies of God, next moved the trial court for a stay of discovery in

---

[1] The alleged victims claim the incidents occurred in the 1990s, when they were between the ages of six and fourteen years old.

2

conjunction with its own motion to dismiss the complaint. The General Council of the Assemblies of God filed a response in support of the Illinois District's motion but went even further and requested the trial court stay all discovery until it ruled on all motions to dismiss.

The Commonwealth, with its criminal prosecution pending against Lehmann, moved to intervene in the civil action and stay discovery. In support of its motion, the Commonwealth argued that the trial court should stay the discovery attempts until the completion of Lehmann's criminal trial to promote justice and fairness and protect its interest in Lehmann's prosecution.

In December 2014, the trial court entered an order granting the Commonwealth's motion to intervene and stay discovery.[2] In its order, the trial court noted that allowing civil discovery to proceed in due course "would result in Lehmann having access to information and statements, including the depositions of the victims and other witnesses, which are not permitted under the rules for criminal discovery." In the interest of fairness and the furtherance of justice, the trial court stayed civil discovery so "Lehmann ha[d] the same rights to information and access to witnesses as permitted under the criminal rules." Lehmann suffered no prejudice according to the trial court because, at that time, the criminal trial was scheduled to take place roughly five months from the date of the order and the civil case had only been pending for six months.

---

[2] The trial court has not ruled on the General Council's related motion simply to limit discovery.

3

Lehmann sought a writ of mandamus from the Court of Appeals in an attempt to have the trial court's order vacated and civil discovery resumed. The Court of Appeals rejected Lehmann's arguments and declined to issue a writ. In the Court of Appeals' estimation, Lehmann failed to prove he was without an adequate appellate remedy and there was no genuine exigency meriting use of the court's writ authority.

Lehmann's criminal trial date was initially scheduled for April 22, 2015. But, while his writ petition was pending in the Court of Appeals, Lehmann moved to continue his trial date. The trial court granted the motion and set a trial date for February 2, 2016.[3]

## II. ANALYSIS.

A writ is an extraordinary remedy, one we employ sparingly and with caution. A court exercises appropriately its discretionary writ authority, therefore, only in remarkable circumstances. Specifically, we recognize two general situations as remarkable enough to be writ-worthy:

> [U]pon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if petition is not granted.[4]

---

[3] This was the scheduled trial date as of the filing of Lehmann's writ petition. The trial court has since granted Lehmann's motion for continuance to a later date. Lehmann's motion for leave to advise the Court of subsequently altered circumstances resulting in continuation of related criminal trial, filed on February 3, 2016, is denied.

[4] *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004).

4

Lehmann does not argue the trial court's discovery stay is outside its jurisdiction. Instead, Lehmann argues the trial court is acting erroneously within its jurisdiction. When operating under this writ class, the writ-seeking party must prove both irreparable injury and inadequate appellate remedy.[5] In rare situations, we have considered petitions writ-worthy despite "the absence of a showing of a specific great and irreparable injury to the petitioner."[6] But those situations otherwise presented a "substantial miscarriage of justice" and necessitated the court's error be corrected "in the interest of orderly judicial administration."[7]

In the present case, we must first deal with the Commonwealth's and General Council's motions to dismiss Lehmann's writ petition as moot. Lehmann's appeal stems from the trial court's order of December 9, 2014, staying discovery. But the trial court entered a new order on May 22, 2015, replacing the order of December 9, 2014. The trial court entered this new order while Lehmann's instant appeal was pending and after Lehmann sought and received a continuance of his criminal trial. The Commonwealth sought an extension of the discovery stay, which the trial court granted with its May order. Discovery, as a result, is now

---

[5] *Hoskins*, 150 S.W.3d at 9-10.

[6] *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961).

[7] *Id.*

stayed in Lehmann's civil case until the conclusion of his criminal trial, which is scheduled for February 2, 2016.

The Commonwealth and General Council highlight these procedural occurrences as mooting Lehmann's appeal because he is no longer appealing from the order that serves as the source of the stay Lehmann wishes to have vacated. A court must, of course, dismiss an appeal "when a change in circumstance renders that court unable to grant meaningful relief to either party."[7] But despite a change in circumstance relating to Lehmann's action, we are not persuaded the entire action is rendered moot.[8]

We recently engaged in a thorough discussion of the mootness doctrine and its parameters within our case law.[9] There is little need to retread this ground. Lehmann's petition does not present a situation

---

[7] *Commonwealth, Kentucky Bd. of Nursing v. Sullivan Univ. Sys., Inc.*, 433 S.W.3d 341, 344 (Ky. 2014) (internal quotation marks omitted).

[8] One aspect of Lehmann's appeal *is* moot: the argument that the trial court erroneously entered an order of indefinite duration. Orders of indefinite duration are strongly disfavored throughout our case law. *See Estate of Cline v. Weddle*, 250 S.W.3d 330 (Ky. 2008) (narrowed on other grounds by *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339 (Ky. 2014)); *see also Landis v. N. Amer. Co.*, 299 U.S. 248, 255 (1936) (noting a trial court's "discretion was abused by [ordering] a stay of indefinite duration in the absence of a pressing need."). In its order of December 9, 2014, the trial court stayed discovery "until such time that the criminal case, styled Commonwealth v. Lehmann, 14-CR-1393, is resolved." Perhaps the trial court's choice of the word *resolved* is vague—lending itself equally to the conclusion of the jury trial or the conclusion of a final appeal in the event of conviction. Regardless, the trial court's order of May 22, 2015, eliminates any potential ambiguities created by the December order. This order stays civil discovery until "the conclusion of the criminal trial, now scheduled for February 2, 2016," clearly designating a definite span of time. So we are unable to afford Lehmann any meaningful relief on this issue.

[9] *See Morgan v. Getter*, 441 S.W.3d 94 (Ky. 2014).

6

where we are unable to afford relief. Regardless of which order Lehmann's appeal arises from, all civil discovery is currently stayed. It would be a waste of judicial resources to dismiss Lehmann's appeal as moot with the basis of the appeal still in existence only to await its return. A controversy exists, to be sure; the trial court's order of May 22, 2015, does nothing to alter this fact.

In any event, even if we were to find Lehmann's current appeal moot, the public-interest exception we outlined extensively in *Morgan* is satisfied. That exception has three distinct elements:

> (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question.[10]

This is surely a question of public importance, involving the rights not only of criminal defendants but also those of civil plaintiffs. It seems likely that criminal and civil cases will again arise out of the same events such that the instant discovery issue will reappear. So the first and third prongs of the *Morgan* test are satisfied.

As for the second *Morgan* prong, our research indicates—and the parties agree—that our case law has yet to answer whether civil discovery should be stayed pending the conclusion of a related criminal prosecution so guidance for future cases is warranted.[11] It is also worth mentioning that as in *Morgan*, we

---

[10] *Id.* at 102 (quoting *In re Alfred H.H.*, 910 N.E. 2d 74, 80 (Ill. 2009)).

[11] Our research indicates that on two particular occasions the Court of Appeals has dealt with situations somewhat similar to Lehmann's current circumstance. In

7

are faced with "a question concerning a matter of procedure and procedural rules, the Court's own bailiwick,"[12] so the danger of encroaching upon the prosecutorial prerogative of the executive branch is low. Mootness aside, Lehmann's challenge to the suspension of discovery in the civil action against him is a permissible matter for our review.

Yet, like the Court of Appeals, we find Lehmann's petition fails because two bases: (1) the trial court did not act erroneously; and (2) Lehmann has not shown a writ is necessary to prevent great or irreparable injury.

Both our civil rules and associated case law, generally speaking, favor broad discovery. Secrecy, after all, is the enemy to the pursuit of

---

*Standard v. Buckner*, 561 S.W.2d 329 (Ky.App. 1977), Buckner received a favorable civil verdict against Standard, all the while Standard was "under indictment for the rapes alleged in the civil action." *Id.* at 330. Standard appealed the civil verdict and argued the trial court erroneously failed to continue the civil action pending the final resolution of his criminal trial. The appellate court rejected Buckner's argument and held the trial court did not abuse its discretion because "[t]here was no discovery which would have conflicted with appellant's privilege against self-incrimination." *Id.* *Standard*, while illustrative, is the opposite of Lehmann's petition: Rather than objecting, the defendant *sought* a continuance. In *Carter v. Drumm*, 700 S.W.2d 423 (Ky.App. 1985), the Drumms were accused of sexually abusing their children. The Cabinet for Human Resources, as a result, took the children into its custody. Dependency actions were scheduled to determine whether the children were dependent, neglected or abused, but the Drumms sought a writ to have the proceedings suspended until their criminal trial was resolved. The appellate court held that relief was unwarranted because there was "no threat of great injustice or irreparable injury about to befall the appellees as a result of the dependency hearings." *Id.* at 424 (internal quotation marks omitted). Again, this is virtually the opposite of Lehmann's situation because the Drumms were arguing their right against self-incrimination would be violated by forcing them to proceed simultaneously with the dependency hearings and criminal trial. The trial court provided Lehmann with the result the Drumms sought, but Lehmann argues it was erroneous in his case. All that to say, this issue has yet to be squarely or thoroughly reviewed.

[12] *Morgan*, 441 S.W.3d at 103.

8

truth. In that vein, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[13] This is true even if the evidence sought would be inadmissible at trial. Criminal discovery, in contrast, is much more limited. For example, depositions are a fundamental part of civil litigation, but a criminal defendant is permitted to take depositions only of witnesses who will be unavailable at trial.[14]

Civil and criminal procedural rules serve distinctly different policies and objectives, to be sure. The federal courts have recognized three primary policy considerations, relevant here, justifying criminal discovery's limited scope:

> First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, it is supposed that revealing the identity of the confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government. Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts.[15]

In light of these concerns, federal courts have rather consistently found "good cause to issue a protective order staying civil discovery when a related criminal proceeding is pending in order to prevent the defendant's

---

[13] Kentucky Rules of Civil Procedure (CR) 26.02(1).

[14] *See* Kentucky Rules of Criminal Procedure (RCr) 7.10.

[15] *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).

9

use of broad civil discovery to sidestep" the rules governing criminal procedure.[16] More directly, a "litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for the use in his criminal trial."[17] Trial courts possess a wide range of discretion to marshal appropriately both civil and criminal discovery. Preventing such dodges or sidesteps is an appropriate exercise of this discretion because it protects the purposes and policies underlying our procedural rules.

We should note that we stop short of presuming that simply because civil and criminal proceedings pend simultaneously that defendants will manipulate the discovery process.[18] But we do highlight the absurdness of "[p]rohibiting a criminal defendant from taking a discovery deposition in a criminal proceeding, only to allow him to take the same investigatory deposition through a related civil proceeding."[19] It is sound policy to protect the integrity of our procedural rules and criminal process.

---

[16] *State v. Deal*, 740 N.W.2d 755, 764 (Minn. 2007) (internal quotation marks omitted) (citing *Peden v. United States*, 512 F.2d 1099, 1103 (Ct. Cl. 1975) ("[I]t has long been a practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way.")).

[17] *Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991).

[18] *See In re R.R.*, 26 S.W.3d 569 (Tex.App. 2000).

[19] *Deal*, 740 N.W.2d at 765.

Each case is different, of course, and no bright-line rule could respond to discovery's many nuances. For those reasons, we agree with a number of federal and state courts in holding trial courts should weigh "the interests of 'litigants, nonparties, the public, and the court itself.'"[20] The balance of these interests is a "situation-specific task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it."[21] We find it unnecessary to provide an exhaustive list of factors for a trial court's consideration, but we find these to be strong guidance:

> (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; [(5)] the interests of persons that are not parties to the litigation; [(6)] court convenience; and [(7)] the public interest in the pending civil and criminal actions.[22]

The Commonwealth and public share a particularly weighty interest in protecting the integrity of the criminal prosecution. The degree to which the issues in the civil and criminal proceedings overlap, then, is particularly important. The more overlap, "the more likely that allowing civil discovery will

---

[20] *Id.* at 766 (quoting *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp.2d 6, (D.Conn. 2002); *see also State v. Tomasso*, 878 A.2d 413 (Conn. 2004); *United States v. Steffes*, 35 F.R.D. 24 (D.Montana 1964).

[21] *Id.* (quoting *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004).

[22] *Id.* (citing *Microfinancial*, 385 F.3d at 78; *Maloney v. Gordon*, 328 F. Supp.2d 508, 511 (D.Del. 2004); *Ganim*, 269 F.Supp.2d at 8).

jeopardize the integrity of the criminal proceeding"[23] as using that discovery may become an "irresistible temptation"[24] to gain an advantage in the criminal proceeding.

Reviewing the trial court's decision with these factors in mind, we are unable to find an abuse of discretion. Lehmann's civil defense and criminal prosecution are closely intertwined—nearly identical—because they involve the same allegations. The Commonwealth's interest, accordingly, is particularly strong. Lehmann suffers no prejudice because of the trial court's discovery stay. Sure, Lehmann cannot depose the plaintiffs as soon as he wishes, but, as we note below, Lehmann is not lacking information about the allegations against him. The stay is of short duration[25] but significantly lengthened at Lehmann's request. As an aside, while we do not attribute any improper motive, Lehmann's continuance of his criminal prosecution tends to imply that he wishes only to proceed with the benefit of the information gained through civil discovery. Again, this favors the trial court's decision.

The trial court considered many of these factors, noting that the Commonwealth had a strong interest and Lehmann was not prejudiced by the stay because his civil case had not pended for long and his

---

[23] *Id.*

[24] *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1203 (Fed.Cir. 1987).

[25] "[T]he length of time of the stay is a factor in considering the prejudice to the party opposing the stay. Risk of prejudice is lessened after the criminal indictment because of the requirement of a speedy trial, which limits the duration of the stay." *Deal*, 740 N.W.2d at 766.

criminal trial was on the horizon. In the end, the trial court's stay order simply was not arbitrary, unfair, or unsupported by sound legal principles.[26]

We would be remiss not to point out that staying discovery should not be a trial court's default position when faced with overlapping civil and criminal proceedings. It is imperative that the trial court properly review the interests of all involved and maintain a degree of flexibility as the matter proceeds. Suspending discovery is one tool available to a trial court—a sizeable tool at that.

Secondly, Lehmann's writ petition fails because he has not shown a writ is necessary to prevent great or irreparable injury.

Lehmann argues time is of the essence because he and his wife are in their mid-to-late seventies and their memories of these supposed long-ago events could fade, taking with them any potential defense to the claims.

The adequacy of Lehmann's appellate remedy aside, Lehmann must still show that our denial of his petition would work a great and irreparable injury upon him—something he simply cannot do under the circumstances presented. A great and irreparable injury under our case law is not merely the high costs attendant with litigation, but, instead, is "something of a ruinous nature"[27] or even "incalculable damage to the

---

[26] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[27] *Robertson v. Burdette*, 397 S.W.3d 886, 891 (Ky. 2013).

[petitioner] . . . either to the liberty of his person, or to his property rights, or other far-reaching and conjectural consequences."[28] We are unable to see such severe injuries here.

A stay of discovery foreclosing a civil defendant's ability to present a defense perhaps would qualify as a sufficient injury. Lehmann attempts to portray such a situation here. But Lehmann is not operating in the dark with regard to his civil defense. He is aware of, at the very least, the general outline of the claims against him via criminal discovery. The Commonwealth, per its duty, has already provided Lehmann with information relating to the evidence to be presented against him when he stands trial for his alleged crimes. Lehmann may prefer more evidence, but the record does not support that Lehmann will be helpless without the victims' depositions.

There being no great and irreparable injury, Lehmann urges us to invoke our certain-special-cases exception. In "certain special cases," we will overlook the great-and-irreparable-injury requirement "to preserve the orderly administration of the laws."[29] But we have been cautious in our application of this exception, opting only to use it "for exceptional cases [where] the remedy may be invoked as a shield from injustice"[30] or where "the action for which the writ is sought would violate the law,

---

[28] *Hoskins*, 150 S.W.3d at 19 (emphasis omitted) (quoting *Litteral v. Woods*, 4 S.W.2d 395, 396-97 (Ky. 1926)).

[29] *Ohio River Contract Co. v. Gordon*, 170 Ky. 412, 186 S.W. 178, 181 (1916).

[30] *Cox v. Braden*, 266 S.W.3d 792, 797 (Ky. 2008).

14

*e.g.*[,] by breaching a tightly guarded privilege or by contradicting the requirements of a civil rule."[32] Aside from the fact that no rule or privilege is violated, the certain-special-cases exception is inapplicable because, as made clear above, the trial court's action was not erroneous. Even if we assumed it erroneous, there is no great injustice in preventing the potential abuse of our criminal discovery rules and protecting the Commonwealth's interest in its prosecution of Lehmann. And the trial court's order has not resulted in undue delay of the plaintiffs' case against Lehmann. We are mindful Lehmann sought the continuance of his criminal trial, effectively lengthening the duration of the stay.

## III. CONCLUSION.

Because of the interrelated nature of Lehmann's criminal prosecution and civil defense, along with the purposes of both criminal and civil discovery, we are unable to hold the trial court abused its discretion in staying civil discovery pending the completion of Lehmann's criminal trial. Finding no error, we conclude that a writ is unnecessary and affirm the decision of the Court of Appeals. Unless otherwise stated in this Opinion, all pending motions are denied.

All sitting. All concur.

---

[32] *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004) (quoting *Bender*, 343 S.W.2d at 801)).

COUNSEL FOR APPELLANT:

Robert Kenyon Meyer
James Lee Adams
Dinsmore & Shohl, LLP


COUNSEL FOR APPELLEE

Honorable Susan Schultz Gibson, Judge
Jefferson Circuit Court

COUNSEL FOR REAL PARTY IN INTEREST, COMMONWEALTH OF
KENTUCKY:

Thomas B. Wine
Jefferson County Commonwealth's Attorney

Dorislee J. Gilbert
Special Assistant Attorney General

COUNSEL FOR REAL PARTIES IN INTEREST, L.M.B., L.M.D., L.M.L:

Michael Jay O'Hara
Gary John Sergent
O'Hara, Ruberg, Taylor, Sloan & Sergent

COUNSEL FOR REAL PARTY IN INTEREST, THE KENTUCKY DISTRICT
COUNCIL OF THE ASSEMBLIES OF GOD:

John R. Martin, Jr.
Landrum & Shouse, LLP

Tracy S. Prewitt
O'Bryan, Brown & Toner

COUNSEL FOR REAL PARTY IN INTEREST, THE ILLINOIS DISTRICT COUNCIL
OF THE ASSEMBLIES OF GOD:

Brian Scott Jones

COUNSEL FOR REAL PARTY IN INTEREST, TRINITY CHAPEL ASSEMBLY OF GOD, INC.:

Matthew W. Breetz
Michael M. Denbow
Stites & Harbison, PLLC

COUNSEL FOR REAL PARTY IN INTEREST, GENERAL COUNCIL OF THE ASSEMBLIES OF GOD:

Tiara B. Shoter
Boehl Stopher & Graves, LLP